PERKINS, GOODWIN & CO. v. UNITED STATES.

(Circuit Court, E. D. Pennsylvania. March 26, 1908.)

No. 52.

1. CUSTOMS DUTIES—WEIGHT—CHINA CLAY—ALLOWANCE FOR MOISTURE.
    Under Tariff Act July 24, 1897, c. 11, § 1, Schedule B, par. 93, 30 Stat. 156 (U. S. Comp. St. 1901, p. 1632), making china clay dutiable by the ton, duty may properly be laid upon the actual weight of the clay and the moisture therein, if the moisture is not more than is ordinarily found; but duty should not be exacted on an abnormal amount of moisture.

2. SAME—ACTUAL WEIGHT—TRADE CUSTOM.
    Under Tariff Act July 24, 1897, c. 11, § 1, Schedule B, par. 93, 30 Stat. 156 (U. S. Comp. St. 1901, p. 1632), making china clay dutiable by the ton, the duty on china clay in casks may properly be based on the actual weight of the importation, regardless of the custom of the trade to consider a cask as half a ton and to pay for it on that basis.

On Application for Review of a Decision by the Board of United States General Appraisers.

Comstock & Washburn (J. Stuart Tompkins, of counsel), for appellants.

Jasper Y. Brinton, Asst. U. S. Atty., and J. Whitaker Thompson, U. S. Atty.

J. B. McPHERSON, District Judge. The merchandise in question is china clay imported from England, and is dutiable under section 1, par. 93, of the Tariff Act of July 24, 1897, c. 11, Schedule B, 30 Stat. 156 (U. S. Comp. St. 1901, p. 1632), at $2.50 per ton. The dispute is solely concerning the proper method of ascertaining the weight upon which the duty is to be laid. The clay is almost invariably imported in casks, and it appears clearly from the testimony before the

court that for 40 years at least it has been the custom of the trade to reckon two of these casks to a ton of 2,240 pounds, and to pay for the contents upon this basis. But in this connection a further statement must be made. The casks are so built that each is intended to hold 1,120 pounds of air-dry clay, so that after a cask has been filled it should ordinarily contain about half a ton of clay—if the material were bone dry, as it never is—plus a variable amount of moisture, which may be anywhere from 10 per cent. to 30 per cent., but which usually averages 10 per cent. or 12 per cent. The packages, therefore, comprising cask, clay, and moisture, may vary a good deal in weight, and, since the duty is laid upon the ton, there may be more or less difficulty in ascertaining the proper quantity of the dutiable merchandise. It is comparatively easy to eliminate the cask—and that has been done in the present case—but when it comes to the two remaining elements, there is room for dispute. In addition to the testimony taken by the importers, the parties have agreed upon the following stipulation:

"It is hereby stipulated by counsel for the respective parties in the above-entitled cause that the merchandise involved therein is correctly specified in the ten protests and entries referred to at the foot of the importers' petition (copy hereto annexed), and that the ten transcripts of the certificates from the surveyor's office herewith submitted represent the 'gross weights,' 'tares' and 'net weights' of the merchandise as found by the government's weighers, and that upon the 'net weights' duty was subsequently assessed, and that the tares therein stated represent the estimated weight of the casks, and have no reference to moisture contained in the contents of said casks, having been computed according to the government's contention either upon the basis of T. D. 27.698 declaring 72 pounds to be schedule tare, or upon actual weight of casks in cases where, under article 1658, Customs Regulations 1899, actual tare has been taken. The importers, however, dispute that the tares were determined in that manner, and claim that according to computations of the tare per cask made by dividing the total tare allowed on, by the total number of casks covered by, each entry, it appears that the weight allowed for each cask was in no case 72 pounds, but was for the ten entries embraced under this appeal as follows:

Entry No.  7,347.................................................78  pounds.
   "      15,002.................................................73    "
   "      22,504.................................................83    "
   "      20,966.................................................74    "
   "       6,881.................................................78    "
   "       4,063.................................................76    "
   "       4,483.................................................73.54  "
   "       6,379.................................................74    "
   "       9,204.................................................78    "
   "       7,624.................................................73    "

"The importers further claim that inasmuch as in their returns pertaining to these entries, the weighers did not 'note at the head of the column of tares, whenever the tare returned by them is actual tare' (that is, weight ascertained by weighing emptied cask), as required by article 1656, Customs Regulations of 1899, the presumption is that the cask weights were merely estimated. But in any event, it is conceded by both parties that even where, by reason of excess moisture, the weight of casks was over the average of 72 pounds each, and even where tare of 83 pounds per cask was allowed, as on entry No. 22,504, no allowance or deduction was made on account of excessive moisture contained in the contents of the casks as distinguished from the casks themselves. No 'written notice of dissatisfaction with the allowance of tare,' attacking the correctness of the weight of the casks as found, was filed by the importers under the provisions of article 1658, Customs Regulations of 1899, because the importers have uniformly contended that, in ac-

160 F.—18

cordance with the commercial transactions and the fact that each cask is made and bought and sold to contain 1,120 pounds air-dry clay with 12 per cent. moisture, duties should be charged on the basis of one-half ton or 1,120 pounds to the cask. Both parties concede that the word 'ton' as used in said paragraph 93 means a long ton of 2,240 pounds in accordance with the definition of the word 'ton' as set forth in section 2951, U. S. Rev. St."

The difficulty about the facts, whether they appear in the testimony or in the foregoing stipulation, is their failure to throw a satisfactory light upon the amount of moisture in the casks now in question. Obviously, if a particular shipment has been so much exposed, either before or during the voyage, that the clay has taken up an excessive amount of moisture, it would be unfair, and certainly against the intention of the statute, to require the importer to pay duty upon an abnormal quantity of water. But it is quite as obvious, that, if the clay is in the ordinary commercial condition, and contains no more moisture than is invariably found in any shipment, the duty may properly be laid upon the actual weight of clay and moisture combined as it may be found to exist at the port of entry. It is just at this point that the present dispute arises. The actual gross weights of the packages in question were ascertained by the government's employés, and after a proper allowance had been made for the weight of the casks the duty was levied upon the net tons thus found to remain. But this remainder, although prima facie correct, did not agree with the importers' expectation. Instead of averaging 1,120 pounds of a mixture composed of theoretically bone-dry clay and 10 per cent. to 12 per cent. of moisture, the casks showed a greater average weight, and the contention is therefore made that the weight above half a ton must be water, and cannot be clay. The importers take the position that the duty should be levied in the same manner as the clay is customarily bought by the trade—that is, without actually weighing the packages—by assuming that each cask contains about half a ton of clay and 10 per cent. to 12 per cent. of moisture, thus making the dutiable weight of each cask vary from, say, 1,200 to 1,400 pounds. If the contents of a cask weigh more than about half a ton, more or less, it is argued that the excess must be water and should be disregarded.

The difficulty about this position is that it rests upon little more than presumption. For their own convenience, the trade reckon two casks to a ton of 2,240 pounds, and pay for the clay on that basis, without taking the trouble to weigh what they actually get, or to determine whether or not it is excessively wet. Sometimes they get more, and sometimes less, than half a ton of clay to a cask. But in all probability the discrepancies in weight even themselves up in the long run, and, if the government chose to levy its duty by the same method, something might be said for it on the score of convenience; but it is so plain that unscrupulous shippers and importers could easily avoid the duty upon an appreciable fraction of every ton if casks were merely counted and were not actually weighed, that it causes no surprise to find the government declining to adopt the method preferred by the importers, and adhering to the method of ascertaining as nearly as possible the exact amount of clay in each package.

No doubt this may sometimes result in imposing duty upon more than the ordinary commercial quantity of water; and, where this can be shown to be the case, a different question may be presented from the question now before the court. For I repeat that in the various importations that are now under consideration there is no testimony to show that more moisture was present than the quantity that is almost invariably found in air-dry clay, and as a consequence the importers' contention has no sufficient foundation of fact.

It is therefore plain that, even if the court were of opinion that the duties in controversy should be reliquidated, it would be impossible to determine with any accuracy what deduction should be made from the number of tons that were found and reported by the government weighers. This number is presumptively correct, and cannot be set aside except for legal cause. But without such cause I am now asked to say arbitrarily that as these shipments were bought and paid for upon the assumption that each cask contained half a ton of clay without reference to its actual weight, and as the importers have no objection to pay duty upon this assumption, whatever the fact may be, the government should be restricted to the amount that the importers are willing to pay. This, I think, is essentially what the argument comes to under the facts now in evidence, and, if I am right in so supposing, nothing more need be said to refute it.

The decision of the Board of General Appraisers is affirmed.